IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cr134

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| JAMES RICHARD RICKS | ) | |
| | ) | |

**THIS MATTER** is before the Court upon motion of the defendant for a new trial (Doc. No. 18) and the government's response (Doc. No. 19). For the reasons stated below, the Court finds that the defendant has failed to carry his burden under Fed. R. Crim. P. 33 and denies the motion.

I.     INTRODUCTION

In May 2006, Defendant James Ricks was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On August 9, 2006, a jury convicted him of that crime, and he is awaiting sentencing. During trial, the Court denied the defendant's request that the jury be instructed on the justification defense as set forth in United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989), and United States v. Perrin, 45 F.3d 869 (4th Cir. 1995), because the justification defense had not yet been recognized by the Fourth Circuit.

On August 6, 2007, the Fourth Circuit decided United States v. Mooney, No. 06-7565, 2007 WL 2231164 (4th Cir. Aug. 6, 2007), which explicitly recognized the justification defense in the context of a § 2255 ineffective assistance of counsel case. At a status conference on August 14, 2007, the defendant made an oral Motion for a New Trial. The Government objected to the untimeliness of the Motion for a New Trial, and the Court extended the time under Federal Rule of Criminal Procedure 45(b)(1)(B). Due to the Court's clear refusal to give the justification

defense instruction, the Court found that the defendant's failure to file a Motion for New Trial on that basis within seven days of the verdict constituted excusable neglect under Rule 45.

II. STATEMENT OF FACTS

The evidence at trial, if believed by the jury, established that Clarence Blue, a man with whom the defendant shared an apartment, appeared at their apartment one night after being missing for several days, behaving erratically as if intoxicated or otherwise not in his right mind. (Doc. No. 12: Trial Tr. 100-03). The defendant claimed that he took the gun away from Blue because he felt that he was in danger given Blue's behavior when he arrived in the apartment.

The defendant testified that when Blue walked into the apartment, he was "walking back and forth . . . just saying things like maybe he was incoherent or something." (Trial Tr. 101). The defendant then noticed something in Blue's hand, and when he recognized that it was a gun, he ran up to Blue and "pinned him upside the wall." (Trial Tr. 102). He stated:

> When I pinned him upside the wall, I hit his hand. When I hit his hand, the gun fell. I picked the gun up. I took the clip out of the gun and threw the clip this way and threw the – threw the clip this way and threw the gun that way. And then I kind of stepped back from him. When I stepped back from him, he just ran out the door.

(Trial Tr. 102). After Blue left, the defendant went to the apartment's balcony and watched Blue drive away. He then went back into the apartment, picked up the clip and the gun, carried them to the dresser in the shared bedroom, and sat back on the couch to watch television.

The police arrived fifteen to thirty minutes later with Blue and found the defendant sitting on the couch watching television. When the officer asked whether the defendant had a gun, the defendant was "surprised" and initially did not respond. (Trial Tr. 19-20, 105). The officer repeated the question and the defendant just looked at Blue and asked him what was going on.

After the officer asked him the question for the third time, the defendant admitted that the gun was on the dresser, got up from the couch, walked into the bedroom, and handed the gun to the officer.

> During trial, the defendant stated that he never considered getting rid of the gun:
>
> And then when I took the gun, I just put the gun on the counter. I didn't think about other things afterwards. I didn't even think about getting rid of the gun or that I can't have the gun around me. I didn't even think about it because it never crossed my mind like that.

(Trial Tr. 111-12). The defendant testified that "after that moment there, I didn't consider [Blue] no threat. He can barely stand up." (Trial Tr. 113). He simply put the gun in the other room not expecting the police to show up and arrest him.

The defendant requested a justification instruction, and the Court found that the facts as presented warranted the instruction. However, the Court declined to give the instruction because it believed the Fourth Circuit had not yet recognized the defense in § 922(g) cases. The case was submitted to the jury without the justification instruction, and the defendant was convicted.

III.  RELEVANT LAW

   A.  NEW TRIAL

Federal Rule of Criminal Procedure 33 states that, on motion of the defendant, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The defendant contends that this Court's refusal to instruct the jury on the justification defense is legally unsupportable after the Fourth Circuit's recent decision in Mooney. The defendant asserts that the evidence at trial, if believed, would entitle him to an instruction on the justification defense.

3

Upon a proper request, a defendant is entitled to instructions on any theory of defense "for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988); see also United States v. Dornhofer, 859 F.2d 1195, 1199 (4th Cir. 1988). "While the trial court is under a duty to instruct the jury on all of the elements of an offense in a criminal trial, it is certainly not required to instruct the jury on a defense the theory of which is not even supported by the testimony of the defendant adduced at trial." United States v. Williams, 604 F.2d 277, 281 (4th Cir. 1979). Thus, the defendant has the burden to show that the evidence adduced at trial supports all prongs of the justification defense.

A court's refusal to give an instruction requested by a defendant is reversible error if the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995). If the defendant can show that the evidence at trial supports the four prongs of the justification defense, then this Court has the power to vacate the verdict and grant a new trial in the interest of justice. See United States v. Vicaria, 12 F.3d 195 (11th Cir. 1994).

B.  JUSTIFICATION DEFENSE

The Fourth Circuit has "construe[d] the justification defense for possession of a firearm very narrowly" and reserves its application for the "rarest of occasions." Perrin, 45 F.3d at 874-75. For the defendant to be entitled to a justification instruction in this case, he will have to produce evidence that will allow this Court to conclude that he

4

> (1) was under unlawful and present threat of death or serious bodily injury;
> (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
> (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and
> (4) a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Id. at 873-74. As the Supreme Court held in a case involving the application of necessity defense to an escape charge, "if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense[] will fail." United States v. Bailey, 444 U.S. 394, 410 (1980) (internal quotation marks omitted). If the defendant had reasonable legal alternatives to violating the law, but instead took possession of the gun after the threat had subsided, the justification instruction is not warranted. See Crittendon, 883 F.2d at 330 ("[T]he defendant must show that a real and specific threat existed at the time of the unlawful possession." (emphasis added)).

The facts of the Mooney case give this Court some insight into what factual scenario must be present to warrant a justification instruction. In Mooney, the defendant returned home from work and was threatened by his ex-wife when she placed a gun to his temple. 2007 WL 2231164, at *2. Mooney knew that his ex-wife had a propensity for shooting at the men in her life, so he grabbed the gun from her. Mooney called his boss to say that his ex-wife had pulled a gun on him and that he was bringing the gun to the bar where he worked to turn it over to the police. Id. Before Mooney could leave, his ex-wife demanded return of the gun and threatened to call the police. Mooney tried to call 911 twice, but his ex-wife disconnected the calls. Id. As Mooney left the house to go to the bar, his ex-wife attacked him and ripped his shirt. Mooney escaped from his ex-wife's grasp and walked the seven blocks to the bar with the gun in his pocket

5

without any delay or detour. Id. When he arrived at the bar, his boss let him in and he immediately asked for a telephone to call the police. His boss told him it was unnecessary because the police were already outside. Mooney walked out of the bar with his hands in the air and the police took the gun and arrested him. Id. The Fourth Circuit concluded that the facts in the record "present[ed] one of those rare occasions which, if they were proven at trial, would [have] require[d] the court to present the defense to the jury and would likely [have] persuade[d] the jury." Id. at *11.

The Court is also instructed by United States v. Stover, 822 F.2d 48, 50 (8th Cir. 1987) and United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990). In Stover, the defendant was involved in a confrontation with a man named John where shots were fired. 822 F.2d at 49. After a struggle, Stover managed to wrestle the revolver away from John, who promptly left the scene. Id. Stover waited in the hallway for five to ten minutes and, when John did not return, placed the revolver on the floor in the hallway. When the police arrived, Stover went outside, lit two firecrackers to cause confusion, and tried to run from the scene. Stover saw the police coming toward him, so he returned to the hallway to wait and handed over the gun. Id. at 50. The Eighth Circuit concluded that "the defense of justification had no applicability to Stover's possession of the gun after John left the scene and Stover was no longer in any imminent danger of death or serious bodily injury." Id.

In Singleton, the facts were in dispute as to how Singleton came into possession of the gun. 902 F.2d at 472. The government contended that Singleton used the gun to burglarize the house of King-El. Singleton, however, claimed that King-El abducted him and threatened to kill him if he did not pay back some money. Singleton admitted that he obtained possession of the

6

gun, but stated that he gained it while escaping from King-El. Id. At the time Singleton took possession of the gun, he was serving out the remainder of his sentence for a previous conviction at a halfway house. Instead of returning to the halfway house, he missed curfew and went to a friend's house, but he left the gun in the car. Id. The police found Singleton at the friend's house and the gun in the car. Id. The Sixth Circuit held that:

> a jury instruction on the defense of justification was unwarranted because Singleton failed to show that he did not maintain possession any longer than absolutely necessary. Corollary to the requirement that the defendant have no alternative to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises.

Id. at 473 (citations omitted). The Sixth Circuit concluded that even under Singleton's version of the facts, he was not entitled to the justification instruction because his continued possession of the gun was not justified. Id.

In this case, the defendant arguably was in imminent danger when Blue entered the apartment waiving a gun and acting erratically. A confrontation occurred between the two men, and the defendant felt it necessary to remove the gun from Blue's possession for his own safety. Looking at the facts in the light most favorable to the defendant, the Court finds that the defendant was under an imminent threat and that he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct.

With respect to the third factor–whether the defendant had a reasonable alternative to both the criminal act of possessing the gun and the avoidance of a threatened harm–the Court concludes that the facts adduced at trial do not show that the defendant had no other alternative to continued possession. The defendant argues that he retained possession of the gun just long enough to make the gun safe and put it out of harm's way. The Court finds this argument

7

unpersuasive. In Mooney, the Fourth Circuit noted with favor "the district court's attentiveness to a felon's continued possession of a firearm after justifiably gaining possession." 2007 WL 2231164, at *10. The Fourth Circuit stated that "[s]uch attention is necessary for the narrow application of the defense." Id.; see also United States v. Al-Rekabi, 454 F.3d 1113, 1124 (10th Cir. 2006) ("Demanding a prompt and appropriate remedial response to the claimed 'necessity' is a legitimate precondition to recognizing the defense and is also a useful tool in measuring the bona fides of a claimant."). The defendant in this case was not justified in retaking possession of the gun once Blue left the apartment. See Stover, 822 F.2d at 50 (holding no justification instruction where defendant maintained possession of the firearm after the threat subsided); Singleton, 902 F.2d at 473 (holding no justification defense where defendant did not show he did not maintain possession any longer than necessary).

The Fourth Circuit found that all of Mooney's actions showed his manifest intention to hand the gun over to the police even though his wife could lawfully possess it. Mooney's conduct was "necessary and efficient in disposing of the gun," and "[a]s is essential to the defense, he did not delay or detour at any point." Mooney, 2007 WL 2231164, at *10. Unlike Mooney where "[t]he trajectory of Mooney's actions all pointed toward handing the gun to the police," id., the defendant did not take any affirmative steps to avoid possessing the gun after the threat abated and admitted that he had no intention of getting rid of the gun once Blue left the scene. The Court finds the defendant's conduct does not show a "single-minded" effort to avoid criminal action–possessing the gun. Id.

After Blue left the apartment, the defendant moved the gun from the hall to the shared bedroom and sat back down to watch television. The defendant did not take any action toward

8

reasonable, legitimate alternatives, such as calling the police to come and remove the gun from the apartment, or leaving the apartment himself. Cf. Mooney, 2007 WL 2231164, at *11 ("[Mooney's] circumstances are not analogous to the more common situation where one could escape, call the police, run to a safe house, or otherwise avoid the threat without possessing the firearm."). And when given a chance to rid himself of possession when the police arrived, the defendant did not respond to the officer's questions about whether he had a gun and never explained the circumstances under which he came into possession of the gun. The Court, therefore, finds that the defendant had no intention of avoiding the criminal act and had other reasonable alternatives to continued possession of the gun. Accordingly, the justification defense is unavailable.

V.     CONCLUSION

The Court finds that the facts do not show that this is one of those "rarest of occasions" where the justification defense applies. Since the defendant fails with respect to the third prong, he is not entitled to a justification instruction, and a new trial is not required in the interest of justice. The defendant's motion for a new trial is, therefore, **DENIED**.

Signed: September 28, 2007

Robert J. Conrad, Jr.
Chief United States District Judge